UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-14003-T/P-MOORE/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EDDIE LEE THOMAS,

    Defendant.
_____/



FILED by _____ D.C.

NOV 10 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

# REPORT AND RECOMMENDATION ON FINAL EVIDENTIARY HEARING IN RESPECT TO PETITION ALLEGING VIOLATION OF SUPERVISED RELEASE [D.E. 31]

**THIS CAUSE** having come on to be heard for a final evidentiary hearing on November 10, 2016 in respect to the pending Petition Alleging Violation of Supervised Release [D.E. 31], and this Court having received evidence, testimony, and arguments of counsel, makes the following recommendation to the District Court:

1. The Petition alleges one violation as follows:

**Violation Number 1**     **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about September 5, 2016, in St. Lucie County, Florida, the defendant committed the offense of battery, contrary to Florida Statute 784.03(1)(a)(1).

In addition, this Court would point out that this Court took judicial notice of the Petition [D.E. 31] as well as the Memorandum dated September 30, 2016 from U. S. Probation Officer Christina Williams to Chief United States District Judge K. Michael Moore in respect to this alleged violation. Counsel for the Defendant requested, at the conclusion of the

evidentiary hearing, that the Court make certain that it takes judicial notice of these two documents. Therefore, the Court points these facts out to the District Court.

2. The sole witness called by the government was Ikekia Frierson. On or about September 5, 2016, she was at the Defendant's residence on Avenue D in Fort Pierce. She and the Defendant were in a relationship and dating at that time. She believes that she had spent the night there the previous evening. She identified the Defendant in open court as the person she knows to be Eddie Lee Thomas and who purportedly struck her and committed a battery on her as alleged in the Petition.

3. She stated that the Defendant was out and came back home around 6:30 to 7:00 p.m. that evening. He had a "jug full of liquor" and appeared to be drunk to her. The Defendant stated that he was at his mother's house.

4. Ms. Frierson testified that she met the Defendant outside by the front door. She had her cell phone in her hand and was looking at it and/or texting on it when the Defendant arrived home. The Defendant took the phone away from her at that time. Ms. Frierson got upset and went inside the house.

5. After a short period of time, Ms. Frierson came back outside the front of the house to get her phone. The Defendant would not give it to her so she slapped it out of his hand. The phone fell on the ground and both she and the Defendant dove for the phone.

6. The Defendant got control of the phone first. Ms. Frierson testified that the Defendant "just kept throwing punches" at her and landed a couple of punches on her face and stomach. She said the first punch landed on the right side of her face and her glasses fell off. She fell to the ground as well. Another lady was passing by and tried to stop the

fight. Ms. Frierson testified the Defendant simply "cussed her out" and told the lady to leave.

7. Ms. Frierson testified that she tried to run. The Defendant hit her in the stomach. She tried to get into the house but never made it to the house because she fell onto the concrete steps at the front of the house. She injured her leg, ankle and toes in that fall. At that point, the Defendant had stopped punching her. She did not ask to be punched and did not permit the Defendant to do so. She also testified that she was not fighting back. She was simply trying to get away.

8. Ms. Frierson evenutally left and went to her mother's home. After telling her mother what had happened, her mother told her to call the police. Ms. Frierson returned to the Defendant's house and called the police. She waited there for the police.

9. Ms. Frierson stated that she received injuries to her right cheek, scar on her right knee, right ankle, and toes on her right foot. She had scrapes down her right leg from where she fell on the concrete steps at the front of the house.

10. Ms. Frierson's brother showed up before the police arrived and was talking with the Defendant. They were not arguing. She admitted that she stood behind her brother and said to the Defendant "Oh, you won't hit me now with my brother here." The Defendant did not strike her any further at that time.

11. The police officer arrived and took photographs of her injuries. She told the police what had happened. The police officer told her to leave and she did so.

12. Ms. Frierson stated that she is 20 years old. When asked, she testified that she believes the Defendant is in his 40's. This Court does not see the relevance of that testimony but will relate it to the District Court so that the record appears to be complete.

13. Additionally, there were questions initiated by counsel for the government as to the Defendant being seen in the area of Ms. Frierson's home subsequent to the incident. Ms. Frierson testified that the Defendant has never approached her, talked with her, or had any further contact with her since the incident. This Court finds no evidentiary value with this line of questioning concerning the Defendant being seen at the corner near Ms. Frierson's house or riding a bike past Ms. Frierson's house. The testimony was that there has not been any verbal or physical contact between Ms. Frierson and the Defendant since the date of the incident on September 5, 2016. The Defendant is free to ride a bike on the street or stand on the street corner without it being implied that he is "stalking" or otherwise attempting to surreptitiously observe Ms. Frierson. For the Court to engage in such supposition simply muddles the record and that is why the Court finds absolutely no evidentiary value in that line of questioning and the responses given by Ms. Frierson.

14. Government's Exhibits Nos. 1 through 6 were admitted into evidence without objection from the defense. These photographs reflect purported injuries Ms. Frierson sustained to her legs and face. As counsel for the government stated when presenting these exhibits, they were "not of the best quality". This Court has looked at the exhibits and finds it difficult to see the physical injuries that Ms. Frierson testified to. This is not to say that the injuries did not occur. This is the Court stating that the photographs, as stated by counsel for the government, are not of sufficient quality and lighting to depict those injuries that Ms. Frierson testified to. Therefore, this Court is left relying upon Ms. Frierson's own testimony under oath concerning those injuries.

15. On cross-examination Ms. Frierson admitted that after the confrontation with the Defendant wherein he took the cell phone from her, she went back into his house and

"went crazy" according to her words. She then went back outside, slapped the phone out of the Defendant's hand and the confrontation ensued. She testified that she never tried to push the Defendant away from the phone and denied that she ever told the police officer that she did so, causing the Defendant to fall to the ground.

16. Counsel for the Defendant pointed out USPO Williams' Memo of September 30, 2016 to Chief Judge Moore wherein partway in the second paragraph of the first page, Ms. Frierson purportedly told USPO Williams that "she pushed Mr. Thomas away from her phone he tripped and fell getting the sand on his face and hair." She denies that happened and denies saying that. The Defendant argues at the conclusion of the hearing that this reflects on Ms. Frierson's lack of credibility.

17. In returning to the cross-examination of Ms. Frierson, she stated that the Defendant punched her several times. She did not receive any medical treatment. She simply put ice on her injuries. She was bleeding from an area on her right leg where she scraped it on the steps as she fell trying to get back up into the house.

18. There was some testimony concerning a previous hearing before this Court in October 2016. This Court made clear on the record that the matter was called for a preliminary and final hearing at that time. Apparently Ms. Frierson was here for that hearing. The Defendant stipulated to probable cause at that time and counsel for the Defendant requested that the final hearing be continued to this date, November 10, 2016. This Court granted the Defendant's request and continued the final hearing to this date. This Court points this out for the District Court so that if there is any mention of a hearing or court appearance in October in this case, that the record is clear in that regard that there was no evidentiary hearing and the Court simply continued the final hearing until this date.

19. Ms. Frierson testified that she has not spoken with the Defendant since that last court appearance in October. She testified on cross-examination that the Defendant did call her at approximately 2:00 a.m. some morning. Neither counsel for the government, counsel for the Defendant, nor Ms. Frierson could come up with a date when this purportedly took place. Nevertheless, Ms. Frierson testified that the Defendant called her at approximately 2:00 a.m. and asked her to come over to his house, which she did. When she arrived there, the Defendant was with his "new girlfriend", a Ms. Clark. Ms. Frierson knows Ms. Clark since they were previously friends. Ms. Frierson denies ever telling Ms. Clark that she would say whatever she needed to at this final hearing to make sure that the Defendant went to jail for a long time. She did admit that she does post on social media. Counsel for the Defendant pointed out a Facebook post that Ms. Frierson purportedly authored that said she was "in court today and won't throw this case away." This Court is not certain what that is supposed to mean. The Court notes that the state charges were dropped according to USPO Williams' Memo of September 30, 2016 to Chief Judge Moore. While the State of Florida filed a No Information in respect to the state charges, this Court does not know if that was at the request of Ms. Frierson or for some other reason. Nevertheless, this Court points out the Facebook post for the District Court so it can be given whatever evidentiary value which may be appropriate. Frankly since no one linked up this particular issue with anything else in the case, this Court is not going to speculate as to what that Facebook post meant, if it in fact stated what was related on cross-examination.

20. On redirect examination, Ms. Frierson said that when she did go over to the Defendant's house at 2:00 a.m., on whatever date that was, that they did talk about the

case and that they were going to court. She did not get any more specific than that and said that simply it was said that "they were going to court." Once again, Ms. Frierson reiterates that she went over at the request of the Defendant. She did not know that Ms. Clark was over there. Counsel for the Defendant argued that it would be inconsistent for the Defendant to invite Ms. Frierson over there knowing that his "new girlfriend" was there at the time. Once again, this Court cannot speculate as to what was in the Defendant's head if and when he called Ms. Frierson to come over to the house. It is not beyond the realm of believability that he would do so or anyone would do so in spite of the fact that there was another woman at his home. The fact that Ms. Clark was there does not detract from the credibility of Ms. Frierson nor otherwise indicate that the facts did not occur in exactly the way that Ms. Frierson's testimony related.

21. Government's Exhibit No. 7 was admitted into evidence over objection from counsel for the Defendant. This Court originally denied that motion when Government's Exhibits Nos. 1 through 6 were offered into evidence. The Court denied the admission of the exhibit at that time since there was yet no cross-examination of the Defendant nor any indication by the defense that Ms. Frierson's testimony was other than as originally given to the police officer at the scene. However, once this Court did receive the cross-examination of counsel for the Defendant which did in some way attempt to impeach or discredit Ms. Frierson's recitation of the facts in her testimony at this hearing, this Court admitted Government's Exhibit No. 7 into evidence when it was once again offered by the government. This exhibit is a handwritten statement at the scene by Ms. Frierson on the date in question. The statement was written by Ms. Frierson on paper given to her by the

police office who responded to the incident. The statement does, in fact, corroborate her testimony that she gave during this hearing.

22. The government then rested.

23. The Defendant presented no witnesses or evidence at the evidentiary hearing.

24. Counsel for the Defendant argued that the Court should take judicial notice of the Petition and the Memo as referenced above. Counsel for the Defendant argued that the Memo contradicts Ms. Frierson's recitation of the incident as to whether or not she did in fact push the Defendant at some point in time. However, that fact, even if it is different from her testimony in court, is not critical to whether or not the Defendant did in fact initiate and commit a battery on Ms. Frierson.

25. The Court also made certain that the Defendant was not contesting the fact that he was in fact under supervised release at the time that this incident occurred and had previously been advised of all of his conditions of supervised release by his Probation Officer. The defense is not challenging that. Therefore, there was no testimony required from the United States Probation Officer to establish those predicates.

26. Counsel for the Defendant also argued that the photographs admitted into evidence do not substantiate the extent of the injuries claimed by Ms. Frierson. They do not reflect swelling in the face or the extent of the injuries Ms. Frierson claims.

27. Counsel for the Defendant also argued that it was not credible that the Defendant would actually call Ms. Frierson over to his home at 2:00 a.m. knowing that he had another woman there. As this Court stated previously, that is not outside the realm of possibility and this Court will not speculate as to why or if the Defendant in fact did that.

The Court can only look to the sworn testimony it has in that regard which is uncontroverted.

28.     Finally, counsel for the Defendant argued that Ms. Frierson's motives are that the Defendant be sent to jail for a long time. Her Facebook post confirms that according to counsel for the Defendant.

## ANALYSIS

29.     This Court has considered all of the evidence submitted, being the sworn testimony and exhibits, as well as arguments of counsel. The standard of proof in violations of supervised release is by a preponderance of the evidence standard and not by a beyond a reasonable doubt standard. Revocation of supervised release is treated as part of the penalty phase for the initial offense involved. The violative conduct need not be criminal and the defendant need only be found by a judge under a preponderance of the evidence standard. United States v. Cunningham, 607 F.3d 1264 (11th Cir. 2010).

30.     The only evidence this Court has before it is that of Ms. Frierson. Her testimony is uncontroverted and has not been discredited. Her testimony is that she did not initiate the battery. Slapping the phone out of the Defendant's hand is not justification for the Defendant to begin punching Ms. Frierson. It is not required that substantial injury or disfigurement be sustained by Ms. Frierson since this is a violation alleging simple battery. Mere unlawful touching and unwanted touching or striking of Ms. Frierson is all that is necessary to establish such a crime under Florida law. These are the most basic principles and this Court does not believe that it needs to cite case law nor statutes to substantiate the elements of a simple battery in the State of Florida. Those facts have not

been contested by the Defendant concerning the elements of proof necessary to sustain such a claim.

31.     The uncontroverted testimony is that Ms. Frierson was struck by the Defendant numerous times. While she may have sustained injuries to her lower body and leg by falling on the concrete steps attempting to get away from him back into the home, the injuries sustained to her face and right cheek were from the Defendant according to her.  Her glasses were knocked to the ground and are still crooked according to her testimony today.  She wore those glasses in court and indicated that they still do not fit correctly since the Defendant knocked them from her face.

32.     Based upon all of the foregoing evidence, this Court finds that the violation alleging that the Defendant committed a battery on Ms. Frierson has been sustained by a preponderance of the evidence standard.  The Court finds Ms. Frierson's testimony credible in light of the facts she has stated and her demeanor on both direct and cross-examination.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant be found to have violated his supervised release in respect to the sole violation set forth in the Petition filed herein and that the District Court set a sentencing hearing at its earliest convenience for final disposition of this matter.  This Court also notes that the Defendant remains on bond pending this Court's Report and Recommendation and final disposition of this matter by the District Court.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable K. Michael Moore, the United States District Judge assigned to this case.  Pursuant to Federal Rules

of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** this /0th day of November, 2016, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. K. Michael Moore
AUSA Carmen M. Lineberger
AFPD Panayotta Augustin-Birch
U. S. Probation